USA v. Bullins                          CR-94-058-M    03/01/95 P

UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW HAMPSHIRE


United States of America

    v.                                          Criminal No. 94-58-01-M

Darrel C. Bullins


ORDER ON DEFENDANT'S MOTION TO SUPPRESS


On July 14, 1994, a federal grand jury returned a one-count indictment against defendant, Darrel Bullins, charging him with unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. §922(g)(1). Before the court are defendant's motions to suppress, by which defendant seeks to exclude evidence of certain statements he made to law enforcement officers while they executed a search warrant at defendant's home. Defendant also moves the court to suppress all items seized from his residence as a result of that search.

I. Background.

After receiving information that defendant, a convicted felon, was in possession of a .25 caliber semi-automatic pistol and a .22 caliber semi-automatic pistol, Special Agent Yerrington

of the Bureau of Alcohol, Tobacco and Firearms sought and obtained a warrant to search defendant's home. On the day the search was to be conducted local law enforcement officers kept defendant under observation. Defendant was in his car with his wife on a personal errand when a local officer intercepted them. The officer notified him of the search warrant, and requested that he return to his home. Defendant complied with the request and voluntarily returned. Agent Yerrington was waiting at his home with several other federal and state officers.

Agent Yerrington advised defendant that he was not under arrest, and asked defendant to open the door so the warrant could be executed. Again defendant complied and went into the apartment with the officers. Defendant was separated from his wife, who was kept outside under watch by Special Agent Coughlin. Once inside, Agent Yerrington told defendant that he wanted to ask a few questions. Defendant testified that he responded to Agent Yerrington's questions because: (i) he did not believe that he had the option of walking away; and (ii) he did not want to be taken to Concord (about an hour away) for questioning.[1]

---

[1] Defendant testified that he was told that he could either answer questions then and there or be taken to Concord to do it the hard way. Agent Yerrington flatly denied making any such

2

While the officers searched his apartment, defendant was directed to remain seated at his kitchen table. While there, he spoke with Agent Yerrington and responded to the agent's questions. Although some of the questions posed were seemingly innocuous, others were of the type intended and likely to illicit incriminating statements regarding defendant's prior criminal history, the origins of the weapons at issue, and defendant's actual possession and use of them. Defendant's responses included a number of incriminating statements.

Although he was neither handcuffed nor formally placed under arrest at any time, defendant was not free as a practical matter to either leave or move about his home while the search was under way. Had defendant attempted to leave or move about, Agent Yerrington testified that he would have been restrained or taken outside and placed under guard.[2]

_____

statement. It is not necessary to resolve the conflict because the point is not critical to the court's ruling.

[2] The Supreme Court has made it clear that officers may temporarily detain individuals under circumstances such as those presented here while the officers execute a search warrant. Michigan v. Summers, 452 U.S. 692, 702-05 (1981). However, the fact that the officers may have lawfully detained defendant does not dispose of the question presently before the court: was defendant in "custody" for Miranda purposes. See, e.g., United States v. Ritchie, 33 F.3d 1477, 1486 (10th Cir. 1994) ("Our

3

Four or five agents, who were armed and dressed in raid jackets, carried out the search. During the course of the search, defendant's wife, who was kept outside, informed Agent Coughlin that the firearms they sought were located in her purse, in the couple's car. Agent Coughlin went inside and, in the defendant's presence, informed Agent Yerrington of that revelation. The agents then asked for and received defendant's oral and written permission to search the car, where they recovered the weapons. The search of defendant's home and car lasted approximately one hour. The agents then left defendant's residence. Defendant was not placed under arrest at that time and was then free to go about his business.

II. Discussion.

    A.  <u>Statements Made by Defendant</u>.

---

opinion today should not be interpreted as an exhaustive pronouncement that the procedural protections required by <u>Miranda</u> are never implicated when a person is detained pursuant to <u>Summers</u>."); <u>United States v. Rowe</u>, 694 F.Supp. 1420, 1425 (N.D. Cal. 1988) ("Although . . . defendant's detention was justified under <u>Summers</u>, the subsequent <u>interrogation</u> of the defendant was not. The <u>Summers</u> opinion `nowhere suggests that the mere fact that a `detention' [is] permissible for Fourth Amendment purposes [makes] it any less `custodial' for <u>Miranda</u> purposes.'") (emphasis in original) (citations omitted).

Defendant moves to suppress all of the statements he made to law enforcement agents on September 20, 1993, arguing that they were the product of "custodial interrogation," not preceded by an informed or valid waiver of his rights under <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966). An interview is "custodial" if a reasonable person in the defendant's position would believe that he or she was deprived of freedom of action in any significant way. <u>Miranda</u>, 384 U.S. at 444. "Although the circumstances of each case must certainly influence a determination of whether a suspect is `in custody' for purposes of receiving <u>Miranda</u> protection, the ultimate inquiry is simply whether there is a `formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." <u>California v. Beheler</u>, 463 U.S. 1121, 1125 (1983) (quoting <u>Oregon v. Mathiason</u>, 429 U.S. 492, 495 (1977)). In that regard, the Court of Appeals for the First Circuit has instructed district courts to determine:

> whether there was a manifestation of a significant deprivation of or restraint on the suspect's freedom of movement, taking into account such factors as "whether the suspect was questioned in familiar or at least neutral surroundings, the number of law enforcement officers present at the scene, the degree of physical restraint placed upon the suspect, and the duration and character of the interrogation."

5

United States v. Lanni, 951 F.2d 440, 442 (1st Cir. 1991) (citations omitted).

Here, as in Lanni, supra, the facts of the case place it somewhere in the gray area between a plainly custodial and plainly non-custodial interrogation. On balance, however, the circumstances here counsel persuasively in favor of suppressing defendant's statements. In support of its ruling, the court relies primarily upon the following findings: (i) defendant was not at liberty to move about the house or to leave during the course of the search; (ii) he was separated from his wife, who was sequestered outside under the watch of another agent; (iii) he was required to remain seated at his kitchen table, under the watch and control of one of the agents while others searched; (iv) although defendant was questioned in the familiar surroundings of his home, the presence of numerous armed law enforcement officials created an atmosphere that was at least intimidating and probably coercive; (v) defendant's subjective belief that he was not free to go was objectively reasonable — a reasonable person placed in defendant's position would have believed that he or she was hardly free to leave, and was under the control of law enforcement; and (vi) the questions asked

6

evidenced a calculated effort to interrogate the defendant for the purpose of successfully eliciting unwarned incriminating statements by maintaining a level of custody sufficient to intimidate but insufficient to trigger <u>Miranda</u>. The effort failed.

This was not a situation in which law enforcement officers routinely enter a suspect's home for an informal discussion relevant to a general investigation, or one in which casual questions related to identity, personal safety, or access to the premises — that is, questions merely incident to a lawful search — are asked. The agents here had probable cause to believe Bullins had committed a crime and that the evidence of the crime would be found in his home; they intercepted him while he was in his car on a public road and directed him to return home. He was closely followed back to his home by the intercepting officer and upon arrival he was separated from his wife (no doubt in part to preclude the normal communication that might occur between husband and wife were each free to move about as they desired); he was given restraint-indicative orders to stay seated at his kitchen table, where he remained under close watch by Agent Yerrington. Although defendant was not told that he was <u>not</u> free

7

to leave, neither was he told that he _was_ free to leave. The ambiguity on that point may have been unintentional, but, nevertheless, the circumstances themselves implied rather dramatically that he was not free to leave. While other armed agents searched defendant's home, he was carefully and pointedly interrogated about the very criminal activity with which he was to be charged. The agent involved in the search and questioning is an experienced and sophisticated law enforcement officer, and was well aware of both _Miranda_'s requirements and the prophylactic purpose to be served by its rule.

Taken together, the above factors and the totality of the circumstances persuade the court that defendant's freedom was in fact curtailed to the "degree associated with a formal arrest." Stated differently, there was "a manifestation of a significant deprivation of or restraint on [defendant's] freedom of movement." _United States v. Lanni_, 951 F.2d at 442. As noted, while some form of restraint functionally equivalent to formal arrest is necessary before _Miranda_ becomes applicable, the mere fact that an interrogation occurs in a suspect's home, or is carried out while the suspect is permissibly detained under _Summers's_ rule, does not automatically make it non-custodial,

8

rendering <u>Miranda</u> warnings unnecessary. All of the attendant circumstances must be considered in determining whether defendant was in practical (if not formal) custody when interrogated.

The evidence presented during the suppression hearing establishes a "feel" of custodial interrogation rather than voluntary dialogue. <u>See</u> <u>United States v. Lanni</u>, at 443. The reality was that this defendant was interrogated while restrained in a manner functionally equivalent to arrest, by sophisticated officers well aware of <u>Miranda's</u> requirements and purpose. <u>California v. Beheler</u>, 463 U.S. at 1125.

Accordingly, the court finds that defendant was in "custody" during the course of the search and questioning. He should have been advised of his <u>Miranda</u> rights before any interrogation. <u>United States v. Lanni</u>, 951 at 442; <u>United States v. Masse</u>, 816 F.2d 805, 809 (1st Cir. 1987); <u>United States v. Streifel</u>, 781 F.2d 953, 961 n. 13 (1st Cir. 1986); <u>United States v. Barlow</u>, 839 F.Supp. 63, 66 (D.Me. 1993). <u>Cf</u>. <u>United States v. Burns</u>, 37 F.3d 276, 281 (7th Cir. 1994) (defendant detained for less than 10 minutes, she was not physically restrained and only two officers searched her hotel room).

9

B. Evidence Seized Pursuant the Search.

Defendant also argues that once the officers located the .22 caliber and .25 caliber firearms in his automobile, the search should have concluded. Accordingly, he claims that all evidence seized from within his home should be excluded as being outside the scope of the search warrant. Alternatively, he argues that the search warrant was invalid to the extent that it authorized officers to search for "any and all firearms" in addition to those specifically identified by manufacturer, model, serial number and caliber. The court disagrees.

The affidavit submitted in support of the warrant application fully and adequately supports the Magistrate's issuance of the warrant authorizing officers to search for other unidentified weapons which defendant may have possessed. The conduct of the officers in executing the search did not exceed the authority of the warrant. Moreover, the court finds that the officers proceeded in objective good faith reliance upon a facially valid warrant and there is no evidence to suggest that the issuing Magistrate abandoned his neutral and detached role in issuing the warrant. United States v. Leon, 468 U.S. 897, 926 (1984).

10

III. Conclusion.

For the reasons set forth above, defendant's motion to suppress statements made by him during an unwarned custodial interrogation (document no. 18) is granted. Defendant's motion to suppress II (document no. 19) is granted as to suppression of statements made by defendant, but otherwise is denied.


SO ORDERED.


_____
Steven J. McAuliffe
United States District Judge


March 1, 1995

cc:  William W. Cleary, Esq.
     United States Attorney
     United States Marshal
     United States Probation